## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## OWENSBORO DIVISION
## CIVIL ACTION NO. 4:25-CV-00036-HBB

**JAMES W.[1]**                                                                              **PLAINTIFF**

**VS.**

**FRANK BISIGNANO, COMMISSIONER OF**
**SOCIAL SECURITY**                                                          **DEFENDANT**

## MEMORANDUM OPINION
## AND ORDER

### I.        BACKGROUND

Before the Court is the Complaint (DN 1) of James W. ("Plaintiff") seeking judicial review

of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g).    Both the Plaintiff (DN

10) and Defendant (DN 15) have filed a Fact and Law Summary.    Plaintiff did not file a Reply.

For the reasons that follow, the final decision of the Commissioner is **AFFIRMED**.

Pursuant to 28 U.S.C. § 636(c) and FED. R. CIV. P. 73, the parties have consented to the

undersigned United States Magistrate Judge conducting all further proceedings in this case,

including issuance of a memorandum opinion and entry of judgment, with direct review by the

Sixth Circuit Court of Appeals in the event an appeal is filed (DN 6).    By Order entered June 30,

2025 (DN 7), the parties were notified that oral arguments would not be held unless a written

request therefor was filed and granted.    No such request was filed.

### II.       FINDINGS OF FACT

On July 17, 2019, Plaintiff filed an application for Disability Insurance Benefits (Tr. 479-

---

1  Pursuant to General Order 22-05, Plaintiff's name in this matter was shortened to first name and last initial.

80).    Plaintiff alleged that he became disabled on July 8, 2015, as a result of head injury, memory issues, right shoulder pain, arthritis, anxiety, depression, hypertension, allergies, migraines, and sensitivity to light and sound (Tr. 158-59).    The application was denied initially on October 16, 2019, and upon reconsideration on January 9, 2020 (Tr. 259-62, 269-75).    On February 11, 2020, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") (Tr. 284-85).

On August 3, 2022, ALJ Jeffrey Eastham conducted an in-person hearing (Tr. 219-34). Plaintiff and his attorney, Mary Burchett-Bower, participated in the hearing (Tr. 219).    In a decision dated August 17, 2022, after evaluating Plaintiff's disability claim, the ALJ found that Plaintiff was not disabled from July 8, 2015, the alleged onset date through December 31, 2019 (Tr. 233).    On August 10, 2023, the Appeals Council vacated and remanded the case to resolve two issues: *res judicata* application of a previous 2019 decision and proper evaluation of the residual functional capacity ("RFC") regarding Plaintiff's headaches (Tr. 245-46).

Plaintiff amended his alleged onset date to April 25, 2019—past the date of the prior ALJ decision (Tr. 541).    On December 19, 2023, ALJ Candace McDaniel conducted a virtual video hearing (Tr. 11).    Plaintiff and his attorney, Mary Burchett-Bower, participated in the hearing (*Id.*).    Sharon Lane, an impartial vocational expert, testified at the hearing (*Id.*).    In a decision dated February 28, 2024, ALJ McDaniel evaluated this adult disability claim pursuant to the five-step sequential evaluation promulgated by the Commission (Tr. 11-27).    The ALJ noted that Plaintiff last met the insured status requirements of the Social Security Act through December 31, 2019 (Tr. 14).    At the first step, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since April 25, 2019 (*Id.*).    At the second step, the ALJ determined that Plaintiff has the following severe impairments: depression, anxiety, history of post-concussive syndrome,

2

and migraine headaches (*Id.*).    The ALJ concluded that Plaintiff has the following non-severe impairments: hypertension, sleep apnea, ganglion cyst, shoulder impairment, general joint pain, tennis elbow, trigger finger, and obesity (Tr. 14-17).    At the third step, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1 (Tr. 17-19).

At step four, the ALJ found that Plaintiff has the RFC to perform light work as defied in 20 C.F.R. § 404.1567(b) except he cannot climb ladders, ropes, or scaffolds; he can occasionally climb ramps and stairs; he can experience noise levels of 1, 2, and 3, but not 4 or 5; he cannot perform jobs in direct sunlight; he must avoid even moderate exposure to hazards including no commercial driving or work around dangerous machinery; he can understand, remember, and carry out simple instructions; he can have occasional interaction with supervisors and coworkers in a non-public work setting, but not in tandem and no interaction with the public; he should avoid work with strict quotas or fast-paced work; and he can adapt to gradual and expected changes in a routine work setting occurring occasionally (Tr. 19).    The ALJ found that Plaintiff cannot perform any past relevant work (Tr. 25).

At step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, he can perform jobs that exist in significant numbers in the national economy (Tr. 25-26).    Therefore, the ALJ concluded that Plaintiff has not been under a disability from April 25, 2019, the alleged onset debate, through December 31, 2019, the date last insured (Tr. 26). Plaintiff filed a request for the Appeals Council to review the ALJ's decision, but the Appeals Council denied Plaintiff's request (Tr. 1-4).

### III.    CONCLUSIONS OF LAW

#### A.    Standard of Review

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. § 405(g); *Cotton v. Sullivan*, 2 F.3d 692, 695 (6th Cir. 1993); *Wyatt v. Sec'y of Health & Hum. Servs.*, 974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied.    *Landsaw v. Sec'y of Health & Hum. Servs.*, 803 F.2d 211, 213 (6th Cir. 1986).    "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way."    *Cotton*, 2 F.3d at 695 (quoting *Casey v. Sec'y of Health & Hum. Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993)).    In reviewing a case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility."    *Cohen v. Sec'y of Health & Hum. Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (quoting *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984)).

When the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-4), the ALJ's decision became the final decision of the Commissioner.    20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); *see* 42 U.S.C. § 405(h) (finality of the Commissioner's decision). Thus, the Court reviews the ALJ's decision and the evidence that was in the administrative record when the ALJ rendered the decision.    42 U.S.C. § 405(g); 20 C.F.R. § 404.981; *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996).

#### B.    The Commissioner's Sequential Evaluation Process

The Social Security Act authorizes payment of Disability Insurance Benefits to persons with disabilities.    42 U.S.C. §§ 401 et seq.    The term "disability" is defined as an

4

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]

42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a); *Barnhart v. Walton*, 535 U.S. 212, 214 (2002).

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim. *See* "Evaluation of disability in general," 20 C.F.R. § 404.1520. In summary, the evaluation proceeds as follows:

> 1)   Is the claimant engaged in substantial gainful activity?
>
> 2)   Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her ability to do basic work activities?
>
> 3)   Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within Appendix 1?
>
> 4)   Does the claimant have the RFC to return to his or her past relevant work?
>
> 5)   Does the claimant's RFC, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

20 C.F.R. § 404.1520(a)(4)(i)-(v).

## C.    Step Two: Severe Impairments

*1. Arguments of the Parties*

Plaintiff avers that the ALJ should have found his obstructive sleep apnea to be a severe impairment (DN 10 PageID # 2751). Plaintiff believes that the ALJ did not consider that Plaintiff had good cause to refuse the prescribed treatment, a CPAP machine, to treat his sleep apnea and that the record does support finding severity (*Id.*).

In response, Defendant avers that because substantial evidence supports the ALJ's step two findings no error exists to support remand (DN 15 PageID # 2770-75). Further, Defendant argues

5

that Plaintiff bears the burden of proof that he is disabled but has not met that burden (*Id.* at PageID # 2770-71).

## 2. Applicable Law

According to the regulations, upon determining that a claimant has at least one severe impairment, the ALJ must continue with the remaining steps in the disability evaluation outlined above. *Maziarz v. Sec'y of Health & Hum. Servs.*, 837 F.2d 240, 244 (6th Cir. 1987). As the ALJ considered the limitations imposed by the plaintiff's medically determinable severe and non-severe impairments in determining whether the plaintiff retained sufficient residual functional capacity to allow her to return to her past relevant work and to other jobs in the national economy, the ALJ's failure to find that certain impairments are "severe" within the meaning of the regulations could not constitute reversible error. *Id.*[2] Stated differently, the Sixth Circuit has found it "legally irrelevant" that some of a claimant's impairments are found non-severe, when other impairments are found to be severe, because a finding of severity as to even one impairment clears the claimant of step two of the analysis and the ALJ should consider both the severe and non-severe impairments in the remaining steps. *See Anthony v. Astrue*, 266 F. Appx. 451, 457 (6th Cir. 2008) (citing *Maziarz v. Sec'y of Health & Hum. Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)). Thus, once a severe impairment is found, the ALJ must consider the "combined effect" of all the medically determinable severe and non-severe impairments in assessing a claimant's RFC. *See* 20 C.F.R. §§ 404.1523(c), 404.1545(a)(2); *Simpson v. Comm'r of Soc. Sec.*, 344 F.

---

2 Other cases that have found the purported error harmless. *Mish v. Comm'r of Soc. Sec.*, No. 1:09-CV-753, 2011 WL 836750, at *1-2 (W.D. Mich. Mar. 4, 2011); *Stephens v. Astrue*, No. 09-55-JBC, 2010 WL 1368891, at *2 (E.D. Ky. Mar. 31, 2010); *Meadows v. Comm'r of Soc. Sec.*, No. 1:07-CV-1010, 2008 WL 4911243, at *12-13 (S.D. Ohio Nov.13, 2008); *Jamison v. Comm'r of Soc. Sec.*, No. 1:07-CV-152, 2008 WL 2795740, at *8-9 (S.D. Ohio July 18, 2008); *Tuck v. Astrue*, No. 1:07-CV-00084-EHJ, 2008 WL 474411, at *3 (W.D. Ky. Feb. 19, 2008).

6

Appx. 181, 190-91 (6th Cir. 2009); *White v. Comm'r of Soc. Sec.*, 312 F. Appx. 779, 787 (6th Cir. 2009). These procedural requirements serve both to ensure adequacy of review and give Plaintiff a better understanding of the disposition of his case.

    *3. Discussion*

    In light of *Maziarz*, Plaintiff's argument that the ALJ erred at step two by finding his sleep apnea to be a non-severe impairment is unavailing. Plaintiff believes that finding sleep apnea to be severe necessitates remand so that an ALJ can evaluate how Plaintiff's sleep apnea and "resulting fatigue" affect the subsequent RFC finding (DN 10 PageID # 2751). However, ALJ McDaniel considered all severe and non-severe impairments when formulating Plaintiff's RFC (*See* Tr. 17), in accordance with regulations. *See* 20 C.F.R. §§ 404.1523(c), 404.1545(a)(2). ALJ McDaniel discussed Plaintiff's fatigue and sleep apnea in detail:

> The claimant testified in the hearing in 2023 that he has fatigue, and he goes to bed all the time. He stated he has returned his CPAP machine because he could not use it. The record documents the claimant reported complaints of fatigue to his primary care provider in 2019. The provider noted this was likely secondary to sleep apnea, obesity, and deconditioning. The claimant was referred for a sleep study and additional tests such as pulmonary function test, stress test, and echocardiogram. He declined physical therapy to assist with his complaints of fatigue. Pulmonary function study was normal. Echo showed normal ejection fraction. Treadmill test noted the claimant was at low risk for ischemic disease. Sleep study was consistent with sleep apnea. The claimant was prescribed a CPAP machine. He reported to his therapist that he had the fitting for the CPAP and was not able to cope with the air being forced in the mask, so he left. He reported in a later visit that he had not heard from the testing facility for the CPAP or from his primary care provider, so he did not plan to try the testing again. He has continued reports of being tired all the time to his therapist but indicates he has not followed up. Despite the claimant's complaints to his mental health provider about fatigue, he reported improvement in fatigue to his primary care provider in January 2020 despite non-compliance with treatment.
>
> Treating notes from February 2021 indicate the claimant continues to decline using a CPAP. The exams of record overall do not describe the claimant as appearing tired or lethargic. He is generally noted to be alert, awake, and oriented. (Ex.

B15F page 9, 15; Ex. B16F-B17F, B19F, B21F-B22F; Ex. B24F page 19, 22, 25; Ex. B28F page 2, 7; Ex. B29F page 2, 6; Ex. B32FB34F; Ex. B35F page 18, 27; See exams, Ex. B15F page 2-3, 9, 14-15; Ex. B19F page 5, 8; Ex. B29F page 4, 8; Ex. B35F page 4, 10, 17-18, 20, 23, 26, 32; Ex. B42F page 24-25; Ex. B43F page 12-13; Ex. B44F page 10-11, 48; Ex. B45F page 10-11, 54-55; Ex. B46F page 25; Ex. B50F page 88-92; Ex. B53F, B56F, B60F)   The record does not demonstrate that his generalized reports of fatigue are attributable to anything other than obstructive sleep apnea for which the claimant declines treatment.   Overall, the record does not demonstrate that sleep apnea causes significant limitations in his ability to perform basic work activities and it is not severe.

(Tr. 14-15).   In sum, the ALJ determined that Plaintiff's non-severe sleep apnea did not cause significant limitation in Plaintiff's RFC.

Plaintiff does not dispute that ALJ McDaniel considered the combined effect of his severe and non-severe impairments in the resulting RFC finding.   *See* 20 C.F.R. §§ 404.1523(c), 404.1545(a)(2).   Thus, because the ALJ's decision otherwise comports with applicable law, any error in finding Plaintiff's sleep apnea to be a non-severe impairment is "legally irrelevant." *Anthony*, 266 F. Appx. at 457.   The undersigned finds no error at step two of the ALJ's decision supporting remand.

### D.    RFC Finding

*1.  Arguments of the Parties*

Plaintiff avers that the ALJ failed "to adequately address" his cervical degenerative disc disease in the RFC finding (DN 10 PageID # 2753-55).   Plaintiff first alleges that the ALJ failed to provide a function-by-function assessment and improperly interpreted MRI and EMG evidence (*Id.* at PageID # 2753).   Next, Plaintiff believes that the ALJ failed to "properly consider limitations from Migraine [sic] headaches." (*Id.* at PageID # 2753-55).   Specifically, Plaintiff avers that the ALJ did fully consider the frequency and severity of his migraine headaches (*Id.* at PageID # 2754-55).   Because of these alleged errors, Plaintiff asserts that the RFC finding is not

8

supported by substantial evidence (*Id.* at PageID # 2755).

In response, Defendant avers that substantial evidence does support the ALJ's RFC finding (DN 15 PageID # 2776-82). Defendant believes the ALJ provided specific references to the evidence when evaluating Plaintiff's cervical degenerative disc disease (*Id.* at PageID # 2777-78). As to Plaintiff's migraine headaches, Defendant believes this argument impermissibly asks the court to reweigh the evidence (*Id.* at PageID # 2779-81). Defendant asks the court to affirm the ALJ's decision (*Id.* at PageID # 2781).

### 2. *Applicable Law*

The RFC determination is the ALJ's ultimate determination of what a claimant can still do despite his or her physical and mental limitations. 20 C.F.R. §§ 404.1545(a), 404.1546(c). ALJs make this finding based on a consideration of medical source statements, prior administrative medical findings, and all other evidence in the case record. 20 C.F.R. §§ 404.1529, 404.1545(a)(3), 404.1546(c). Thus, in making the RFC determination ALJs must necessarily evaluate the persuasiveness of the medical source statements and prior administrative medical findings in the record as well as assess the claimant's subjective allegations. 20 C.F.R. §§ 404.1520c, 404.1529(a).

### 3. *Discussion*

#### a. Cervical Degenerative Disc Disease

Plaintiff first complains that as to his cervical degenerative disc disease, the ALJ erred by failing "to identify and rationalize specific limitations" and not providing "a function-by-function assessment" (DN 10 PageID # 2753).

"Although a function-by-function analysis is desirable, SSR 96-8p does not require ALJs to produce such a detailed statement in writing," as there is a difference

9

"between what an ALJ must consider and what an ALJ must discuss in a written opinion." *Beason v. Comm'r of Soc. Sec.*, 2014 U.S. Dist. LEXIS 113792, 2014 WL 40463380, *13 (E.D. Tenn. 2014) (quoting *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 547 (6th Cir. 2002)).    Social Security Ruling 96-8p, 1996 SSR LEXIS 5 simply requires that the ALJ consider each function independently, but does not demand that the ALJ provide a narrative discussion in the decision of each function.    *Delgado*, 30 F. App'x at 547-48.    "[T]he ALJ need only articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record."    *Id.* (citation omitted).

*Salmen v. Berryhill*, No. 3:16-CV-218-CCS, 2017 U.S. Dist. LEXIS 158319, at *16-17 (E.D. Tenn. Sep. 27, 2017).    Plaintiff does not cite to authority supporting his argument; thus *Salmen* controls.

Here, ALJ McDaniel discussed the evidence and Plaintiff's degenerative disc disease:

The record documents the claimant saw a primary care provider, a hand specialist, a pain management provider, and a spine surgeon for evaluations of his complaints of neck pain radiating into the upper extremities.    The claimant has had limited physical therapy, which he reported was beneficial.    The pain management provider prescribed B-complex vitamins, a topical cream, and performed epidural steroid injections.    The claimant reported in 2022 that physical therapy was going well.    Updated records document the claimant had an evaluation with Norton Leatherman Spine Center in February 2023.    Following updated imaging and evaluation, the surgeon indicated the cervical stenosis on his MRI is not severe enough to warrant surgical treatment and he recommended continued conservative treatment such as physical therapy or chiropractic care and advised him he could continue to use his NSAIDs.    (Ex. B39F, B40F-[sic], B41F-B46F, B50F, B51F, B52F, B55F, B59F, B60F; Ex. B50F page 183)

While imaging supports the presence of degenerative disc disease, cervical and upper extremity focused exams with specialists have typically been unremarkable. MRI of the cervical spine from August 2021 noted mild spinal canal stenosis C4-5 through C6-7 with mild flattening of the spinal cord without spinal cord edema. There was multilevel neural foraminal stenosis, moderate bilaterally at C6-7.    The record documents the claimant had complaints of neck and upper extremity pain/numbness for which he was referred to a hand specialist.    The claimant had an EMG/nerve conduction study in August 2021.    The nerve conduction study was normal.    EMG found sparse fibrillation potentials noted in the C7-8 myotomes bilaterally.    The findings were suggestive of a pre-ganglionic root level injury involving the C7-8 nerve roots bilaterally.    Exam described normal strength in the bilateral upper extremities.    Tinel's was negative at the carpal and cubital

tunnel.  All upper extremity dermatomes and peripheral nerve distributions were within normal limits to light touch bilaterally.  Follow-up exam with the hand specialist described full range of motion of the cervical spine and upper extremities with normal light touch sensation.  The claimant was diagnosed with cervical radiculopathy by the hand specialist and referred to an orthopedic spine surgeon. In a September 2021 new patient visit with Norton Leatherman Spine Center, the claimant was described as well-nourished and in no apparent distress.  He had reasonable range of motion of the neck with no tenderness.  He had normal strength in the bilateral upper extremities including normal grip strength. Subsequent evaluations with spine surgeons in 2022 and 2023 have described normal strength and intact sensation in the upper extremities.  In an ER visit in May 2023, the claimant had normal range of motion in the neck.  (Ex. B39F; Ex. B40F page 70, 74-75; Ex. B41F page 9-11; Ex. B42F page 18, 22-25, 27-29, 51-54; Ex. B43F page 8-15, 50-56; Ex. B44F page 3-12, 46-52; Ex. B45F page 6-11, 47-56; Ex. B46F page 23-29; Ex. B50F page 11-14, 81-82, 183, 249; Ex. B51F page 47, 104; Ex. B52F, B55F, B59F; Ex. B60F page 130)

(Tr. 21).    ALJ McDaniel's discussion demonstrates that she considered each function and supported her determination with specific citations to the record.    ALJ McDaniel discussed several exhibits in detail and articulated how they supported her RFC finding.    Furthermore, Plaintiff does not point to any specific limitations that should have been adopted but asserts that "the ALJ fails to adequately address the impairment."    (DN 10 PageID # 2753).    "Such blanket assertions without any citation to the record or supporting evidence is insufficient to undermine the ALJ's RFC determination."    *Salmen*, 2017 U.S. Dist. LEXIS 158319, at *18.

Plaintiff then attacks the ALJ's reliance on MRI and EMG evidence, arguing that the ALJ improperly interpreted medical evidence (DN 10 PageID # 2753).    Defendant counters that Plaintiff's surgeon reviewed the diagnostic test and made findings, rather than the ALJ (DN 15 PageID # 2777).    Plaintiff avers that the ALJ improperly interpreted the MRI and EMG evidence to support her RFC finding, but Plaintiff does not explain how the ALJ interpreted the scans improperly or to any specific error.    It is well established that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."

*United States v. Layne*, 192 F.3d 556, 566-67 (6th Cir.1999) (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995 96 (6th Cir.1997)); *see also Brindley v. McCullen*, 61 F.3d 507, 509 (6th Cir.1995) (observing that "[w]e consider issues not fully developed and argued to be waived."); *Rice v. Comm'r of Soc. Sec.*, 169 F. App'x 452, 453 (6th Cir. 2006).

Even if Plaintiff had developed his argument, it is unavailing because "an ALJ does not impermissibly interpret raw medical data by using a radiologist's findings to formulate a claimant's RFC."    *Clinton L. v. Comm'r of Soc. Sec.*, No. 1:24-CV-654, 2025 U.S. Dist. LEXIS 49903, at *11 (W.D. Mich. Mar. 19, 2025) (citing *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 726-27 (6th Cir. 2013)).    Plaintiff's August 2021 MRI was reviewed by radiology and reported in his clinical notes (Tr. 1456-63).    ALJ McDaniel relied on a report summarizing findings from the August 2021 EMG study (*See* Tr. 21) (citing Tr. 1935-36).    Because ALJ McDaniel properly relied on the test summaries prepared by medical providers, no error exists, and Plaintiff's argument lacks merit.

b.  Migraine Headaches

Plaintiff contends that the ALJ failed to properly consider limitations from migraine headaches: specifically that the frequency and severity of migraines will result in absences precluding employment (DN 10 PageID # 2753-55).    Plaintiff points to treatment notes from 2019 to 2020 as evidence of Plaintiff's frequent and severe migraines, which Plaintiff avers undermines the ALJ's RFC finding as not supported by substantial evidence (*Id.* at PageID # 2755).    Defendant avers that Plaintiff's argument directs the Court to improperly reweigh the evidence and that the ALJ supported her decision with substantial evidence notwithstanding some evidence that would support a different determination (DN 15 PageID # 2779-81).

12

ALJ McDaniel determined that:

While the claimant has reported migraine headaches, the objective record does not demonstrate that these headaches occur at a frequency or intensity which would result in absences from work or otherwise preclude ongoing work activity. Treating notes document the sustained a blow to the head in 2014 and was treated for post concussive syndrome.   The notes indicate the claimant was dazed but had no loss of consciousness.   Head CT noted no evidence for acute intracranial abnormality.   Shortly thereafter, the claimant subsequently reported persistent headaches.   MRI of the brain noted findings compatible with minimal chronic ischemic periventricular white matter disease bilaterally, most likely from underlying microangiopathy.   (Ex. B1F-B2F, B4F-B5F; Ex. B14F page 9-87) During the period under consideration, the claimant has had routine follow-up visits with a neurologist for migraine headaches, which appear to be treated with medication.   The claimant generally reports control of the headaches with medication, and this is demonstrated by the lack of increased or more specialized treatment modalities.   He reported in August 2019 that he has 1-2 headaches a month.   He reported decreased frequency in headaches in February 2020.   He reported headaches were stable in October 2021.   (Ex. B8F page 1-2; Ex. B14F page 3-6; Ex. B23F, B37F-B38F)   The residual functional capacity herein includes restrictions to avoid headache triggers such as noise and light exposure.

(Tr. 22).   Plaintiff and ALJ McDaniel agree that in August 2019 he reported to his provider that he experienced one to two headaches per month (DN 10 PageID # 2754) (referencing Tr. 22). Plaintiff quibbles with the ALJ's reliance on treatment notes from a visit in February 2020 reporting that Plaintiff's headaches are "not as frequent as before" as it does not reference a specific time period (*Id.*) (citing Tr. 1317).   This argument is incongruous with Plaintiff's reliance on repeated notation in treatment records that Plaintiff's headaches are "stil [sic] infrequent recently" when the time period is also undefined (*Id.* at PageID # 2754-55) (citing Tr. 1318).   Plaintiff points to the repeated notation that headaches are "stil [sic] infrequent recently" from a February 2020 visit (Tr. 1318), a November 2019 visit (Tr. 1157), and visits from May, August, and October 2020 (Tr. 1316, 1314, 1312) as evidence that the frequency and severity of Plaintiff's headaches has remained stagnant at one to two headaches per month (*Id.*).   Plaintiff acknowledges he did testify that his headaches have decreased from the original head injury (*Id.*) (citing Tr. 65).

13

Regardless of the evidence Plaintiff has coalesced to support a different RFC finding, the undersigned reviews the ALJ's decision for substantial evidence. "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." *Cotton*, 2 F.3d at 695 (quoting *Casey*, 987 F.2d at 1233). Here, ALJ McDaniel referenced Plaintiff's improvement on medication, "lack of increased or more specialized treatment modalities," reports in subsequent treatment notes of decreased frequency of headaches, CT finding no acute intracranial abnormality, and an MRI showing minimal disease (Tr. 22). While Plaintiff articulates evidence that points to a more restrictive RFC determination, ALJ McDaniel's RFC findings are nonetheless supported by substantial evidence. Thus, the undersigned finds no error warranting reversal because the decision is supported by substantial evidence and comports with applicable law.

### E.  Conclusion

In conclusion, because the ALJ's decision is supported by substantial evidence and comports with applicable law, the undersigned must defer to his determination. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). Regardless of how the undersigned may view the evidence, it is not this Court's place to re-try or re-evaluate the findings of the ALJ. 42 U.S.C. § 405(g). Therefore, Plaintiff is not entitled to relief with regard to his challenge.

14

## IV.    ORDER

**IT IS HEREBY ORDERED** that the final decision of the Commissioner is **AFFIRMED**.

*H. Brent Brennenstuhl*

**H. Brent Brennenstuhl**
**United States Magistrate Judge**

February 10, 2026

Copies:    Counsel

15